for the next case, please. Nicolosi. Good afternoon, Your Honor. May it please the court, please? Counsel. Oh, your honor. The issue of the main issue today is the, uh, I guess the 501.2C2 of the vehicle code, which states that it's mandatory that a chemical test is taken when two factors are present. Number one, the vehicle that is driven causes death or personal injury. And number two, that the police have probable cause to believe that individual is under the driver's guilty of DUI. Of course, there's no debate on issue one, whether or not the death or personal injury occurred, clearly did in this case. Issue number two, and the people suggest in their brief that this statute should be interpreted as requiring testing when police officers have probable cause to believe that a driver is guilty of DUI under 11-501A. Whereas the defense counsel and defendant is arguing that the phrase under the influence means specifically that the driver is impaired. And the people believe that that isn't a logical reading of the statute and it leads to kind of inconsistent results. People focus this court's attention on 2-11-501A, which is specifically entitled driving under the influence. Now, of course, there are two different types of driving under the influence violations under 11-501A. There's the under the influence type where it's A2 through A5 that involve actual impairment of driving ability. And then there's the other two sections, A1 and A6, that have no impairment element and have solely a strict liability type of criteria. And in this case, the defendant was charged under A6, which is, of course, is driving with any amount of a drug in their system. And the people believe that A1 and A6, these strict liability offenses, are under the statute entitled driving under the influence. Therefore, the legislature intended that, for example, a presumption, for lack of a better word, that driving, for example, under A1 with a blood alcohol content of over 0.8 or having any amount of drug in your system under A6 are, quote, driving under the influence. And the people believe that if those subsections are considered driving under the influence under 501A, that they should also be considered driving under the influence under 501.2C2. People believe that this phrase should be considered identically under 501A as it is under 501.2C2. If you do that, how would you, what would be your probable cause for A1 and A6, absent the urine test? Well, Your Honor, counsel in his brief mentioned that the application of people's position to A1 wouldn't comport. The people believe, regardless of whether it comports, that A6, the application of it to A1 is irrelevant to this case, Your Honor. But the people would also submit that probable cause to believe that a driver, his blood alcohol content is over 0.8, believe it would be present if, for example, the driver is really drunk. If the driver is really drunk, obviously there's a probable cause to believe that he is, and I'm talking using objective, Your Honor, objective criteria, the slurred speech, glassy eyes, performance of tests. Okay, but you didn't have any of that in this case. Oh, I know, Your Honor, but we also didn't have A1. I was just explaining why A1 isn't irrelevant to this discussion. But in this case, with regard to A6, the people believe the statements of a defendant that he was recently smoking marijuana or recently ingesting any drug would provide probable cause for, for example, testing, for example, a 501.2C2 to be clear, where it's reasonable for officers to assume that drugs are in your system for up until 30 days. I don't have those sites on me, but they're on my brief. And that would provide the probable cause necessary. And people submit that that probable cause should trigger the mandatory testing, mandatory testing requirements. Your Honor, what the trial judge's ruling here does is it allows the testing, it allows testing when there's a probable cause that a driver is impaired. But at the same token, it doesn't require the testing when the law enforcement officers have probable cause to believe that there is a, that there is a drug in the driver's system. And the people don't, don't believe that that's consistent. How could, how could testing be required when there's personal injury or death, when objective impairment evidence is there, but not when, when there is evidence such as the defendant's statements here that there is drugs. The people don't understand why one would be covered and not the other. People also pointed out, on the same token, in the last sentence of 501.2 C2, that the purpose of this statute is for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both. So the statute wants to, is designed to figure out if there is any amount of drug in the person's system, but it won't allow officers to use the evidence that they've gleaned based on their own observations and their own conversations with this gentleman to find the evidence that this statute is specifically designed to, to garner, gather. People don't believe that makes sense, Your Honors. Let me ask you about the temporal aspect of this case. Okay. What do you say is the probable cause? And this relates to the temporal aspect. When did the officer have probable cause here? What information did he have? Well, Your Honor, the people would argue that, um, there were, there are two things that clearly happened before the test, the test in the hospital. Defendant clearly said that he was nervous because he had been partying. When did he say that? He was, when he was, uh, he was talking to the officers as the nurses were gathering his information. Okay. Why was he there talking to the officers when the nurses were gathering? Well, Your Honor, the, the, the police made it pretty apparent to the defendant that he had to go to the hospital too. Police took him to the hospital, right? Uh, his father, he was in his father's car. He said he had to go to the hospital. Yes, Your Honor. No, his father drove him to the hospital. Sure. Okay. So police said he had to go to the hospital. So he's at the hospital for what reason? To give the test. And they wanted him to take the test. Yeah. Right. And when do you get, when are you supposed to take a test? Uh, when there's probable cause to believe you're under the influence. When was the information they gathered? When did that information to establish there's probable cause? While at the hospital, Your Honor. So isn't there a temporal problem with that? I mean, do you have to have probable cause at the time you order somebody to take the test? You, Your Honor, the people would still submit, definitely have a point, Your Honor, but the people don't believe that, that the defendant was under arrest at the time he was, um, in the process of he was, he doesn't necessarily, um, know that he, he's not free to leave. He, he listens to the officer and goes to the hospital and while at the hospital, they, they, they gather this evidence. Um, in other words, they learned about it after they ordered the test. Yes, Your Honor. Okay. Is that the constitutional standard for probable cause? In other words, under that theory, what stops any officer from having a but it could be under the influence. So we'll just order a test and then hope while they're waiting for the test, that something else comes up to, in hindsight, justify the requirement to have a test. I mean, you see the question I'm asking? I absolutely do. I thought, you know, I know there's, there's a lot of debate here in these briefs about what probable causes, but is that the real question here? I mean, is there a or not? I mean, that's what I'm asking, you know, because I know like in your briefs, you both argue about, you know, what's probable cause, this probable cause, this probable cause. And, you know, probable cause doesn't have to be evidence of, of, um, you know, that would prove someone guilty beyond a reasonable doubt. Obviously we know that. But when I was reading your briefs, both your briefs, I was concerned about the temporal aspect about this, because what would this mean if we have somebody go there to take the test? And, uh, if they say something that's fruitful to justify the test, that justifies the test. Well, you know, it's post-factual then. Is that right? Is that what? Yes. Yeah. I, this is a question I thought of the last couple of days that I was, uh, uh, preparing and don't have a real good answer at all for. I mean, I'm not trying to, I understand, I understand to weigh your, you know, the argument, but it seems to be an aspect of this case that's inherent in the case. Yes. Yes. I can understand where you're coming with your honor. Basically the, the, the question is, you know, how did he get to the hospital? I think the question, is that important how he got to the hospital? And I mean, correct me if I'm wrong, but it seems to me that the facts here in this case show that the police had no reason to suspect the defendant was under the influence of alcohol and drugs before they ordered him to submit to the testing under this section, under a 0.2 C2. Is that a fair statement? I mean, you only testified to that hearing, didn't you? Yes. Okay. Uh, so anything the police have learned about his partying or smoking marijuana, um, even if it does, you know, and the argument here has always been about probable cause, even if that would be probable cause, is, is really that the issue here in this case? Uh, because we're, we're talking about the legitimacy of the police conduct under this section and that's based on knowledge or, you know, or probable cause that the police have. And when's that triggered? Isn't that triggered when you order someone to do the test? Very valid points. And I, I just, I don't really have a response to it. There was no other indicia of probable cause. Not at this, not at the scene before they, before they ordered, before they ordered or directed him to take the test. I mean, you don't see a lot on this. Uh, I'm sorry, Judge. No, I can. Okay. I, you don't seem to see a lot on this. I mean, I, there's a old Supreme Court case from, not that old, from 05. People versus Lee, uh, that, uh, indicate probable cause determination is that based on facts known at the time of the arrest. Um, and so when you're dealing with these DUI things, it's at the time you order somebody to do something like the testing. Yes. Uh, it's not exactly the same thing, but comparable. Yeah, I would agree. Uh, so I mean, so, okay. Do you even address which probable cause or not under this when you've got this? I believe in the briefs, we only, I only argued probable cause based on the indicia that you learned at the hospital. Um, I honestly can't, this case has obviously been going on quite a while. I, I don't remember why I didn't address the, um, probable cause at the, or anything, um, evidence gleaned at the, at the scene of the crime. Um, this is really something I, I, I thought of yesterday. Well, I'm not criticizing you. I mean, I'm asking these questions because this is what bothered me about this case. Yes. You know, about the, the, what's the real question about this case? So again, I'm, I'm certainly not, uh, criticizing. I'm, I'm asking these questions, uh, because I don't know any law that says the DUI, uh, testing requirements are different from the general law dealing with probable cause. Are you aware of any cases like that? No. Um, it, it, it seems to be that these are kind of the same, the same problems that the trial judge, uh, had below, um, multiple times or, well, the first time was a little different, but yeah, these are, these are problems and, um, thank you very much. Um, yes, Your Honor. I, I, I, unfortunately I'm unable to really construct, uh, an argument as to, to the propriety of, of having the defendant go to the hospital, regardless of whether he signed his, his consent form and read it and whatnot. Um, it has to go in order. There has to be certain things present in there. And to be fair, I mean, what you were answering are really the direction from this court in the earlier appeal. I mean, uh, it was remanded, uh, to determine whether the defendant gave knowing and voluntary consent to the testing, if not, uh, whether to, uh, C2, uh, and it's under the influence applies to cases charged under the strict liability. And I mean, these were the directions to the trial court and whether the police in this case had probable cause, uh, to order the defendant to submit to testing under, you know, uh, two C2. Yeah. And so they sort of inter messed, uh, the, um, the second and third question. Uh, and so there was a lot, there's been a lot on this. What is probable cause in this case? Yes. Um, but yes. Yes. Right. I see. Yeah. Maybe, maybe the trial judge, uh, didn't give the proper, uh, direction to the appellant and the monopoly of where to focus their attention on this case. And I, I, yeah, I guess I just ran with the, uh, the statutory construction argument, which, uh, maybe, maybe we don't get to, maybe that hasn't been said, uh, um, I guess regardless of the facts of this case, the people would, would maybe find it instructive or interesting if this court would discuss, maybe, maybe comments, uh, on the, um, the statutory construction argument that the people put forward. Um, the people think it isn't an important and interesting case, uh, maybe for the Supreme Court to, um, to take a look at in the event we get there. So you're asking us to, I'm sorry. No, you're asking us to write a little dicta on, on the law. I guess I am. I don't know if that's appropriate or if that's done. Well, we might well do it. We, we have been known to do that, but, um, I'm not sure the Supreme Court would take it if it was dicta. Yeah, you're probably right. Uh, I guess it's worth a shot. It's worth a shot. I think the Supreme Court's told us that we should do it, should not do it. I'm not saying we should, I'm just saying we have in the past. I mean, it hasn't stopped us. Well, if you feel compelled to do your honors, please feel free. But, uh, with that, are there any other questions? Thank you. Thank you, Mr. Nicolosi. Mr. Fisher. Do you have anything to add, Mr. Fisher? Excuse me, your honor? Do you have anything to add? Uh, I think I might, yes. Please go ahead. I'll try not to take up too much of your time, but, uh, good afternoon, your honors. I'm representing the defendant, Terrence Russell. Uh, your honors, Honorary Justice Carter, I think I should begin by addressing the point that you raised. I think that is one of the two problems with the state's argument on appeal, and it's actually is something that I noted on pages 10 and 11, uh, of the appellate's brief that specifically cited an Illinois Supreme Court case for the proposition that probable cause must exist prior to the search. Uh, I'd say there are two problems with the state's argument on appeal, uh, two different reasons why your honors might decide, and the defendant urges your honors to decide that the trial judge was correct to suppress the test results. Your honors could either find that the judge was correct in was impaired or intoxicated as a result of alcoholic drugs at the time of the accident, and because the police admitted they did not possess such probable cause, can affirm on that basis. Alternatively, even if your honors agree with the interpretation of probable cause put forth by the state, which is probable cause to believe that the defendant had violated any of the subsections of the DUI statute, specifically here, subsection 86, presence of any drugs in the motorist system, here, the police simply lacked that probable cause. Uh, I would say that they never obtained that probable cause, but, but another aspect of that argument is a temporal, uh, uh, question which your honor raises. Uh, the state, uh, arguably relied on, and, and I should also mention the trial judge did mention this in his findings. Toward the end of his findings, he, he brought this up that, uh, in his mind, the state had not established, uh, of course, again, his primary ruling was, uh, there was a requirement of probable cause of impairment. Here, uh, there was no such probable cause, but alternatively, he noted that any statements made by the defendant, which might've suggested that he had any drugs in his system, there was no showing that those statements were made before the defendant submitted the urine sample. Uh, there's testimony about a couple of different statements here. One, uh, the state relies on an appeal that the defendant allegedly said that he was partying some weeks prior to the incident. One problem here, the term partying was never clarified. And secondly, the time frame of some weeks before the incident was never clarified. And so I would submit to the court that even if that statement was made, it did not give the least probable cause to believe that Mr. Russell had any drugs in his system at the time of the accident. In addition, there was testimony about the defendant having made a statement that he smoked marijuana the day before. And this is where the timing question really comes in, because the only testimony as to the timing of that statement was that it was made later in the evening. And the trial judge said that from that testimony alone, it was not shown that that statement was made before the sample was provided. And of course, the Constitution requires, again, that probable cause exists prior to the search. Uh, it cannot be uncovered as a result of the search. Uh, the state on appeal, uh, insists that it is not advocating an interpretation of the statute that would simply allow the police to arrive on the scene of the accident and guess the drivers are under the alcohol or drugs in your system. And Your Honor, Justice Carter brought this up as well. But as Your Honor brought up, that's basically exactly what happened here. They arrive on the scene. It's a serious accident. They tell him he must go to the hospital and submit a urine sample, uh, based on a pure guess. And so although the state argues that's not the application of the statute that it's advocating, in effect, under the facts of this case, that it is what it's advocating, or at least in this case, the case that the state says, let the results come in, which runs contrary to that argument. No, that's that's not what what we're advocating here. I suppose it's also possible police may not have even realized there was a need for probable cause because there's never any testimony that they make statements thinking they have probable cause or indicating anything to the defendant about probable cause. Maybe they felt that all that was necessary was the fact that it was a serious accident, which you have here. But obviously, the statute requires something more. If I can beg just a few more moments of Your Honor's time with respect to the interpretation that the judge found to exist here. And again, I think Your Honors and defendant urges Your Honors to affirm under either the judge's interpretation or the state's interpretation, because either under either or under neither interpretation, did the police have the requisite probable cause. But with respect to the judge's interpretation, the defendant submits that it's consistent with the plain language of the testing statute, which uses the frame of the phrase under the influence of drugs or alcohol. And that certainly is a phrase that appears in the Illinois case law. Defendant submits it is a term of art, meaning impairment or intoxication or inability to safely operate a motor vehicle as the result of consumption of drugs or alcohol. And it should be presumed that the legislature knew it was using a term of art and therefore intended that the probable cause be that the motorist was impaired at the time of the accident. Now the state asked this court to look to the DUI statute and comes up with a different interpretation of this probable cause requirement. Interestingly, though, as the state notes, four of the subsections of the DUI statute, A2 through A5, use the phrase under the influence. And as the state notes in that statute under those subsections, that means impairment. So the defendant would ask, how could under the influence, under the DUI statute mean impairment? But now under this statute, that phrase is construed to mean something completely different. There's just no consistency there, especially since here the state is saying look to the DUI statute. But if you look to that part of the DUI statute, you see the same phrase used under the influence. And to construe it one way in that testing statute, the defendant submits there's no consistency. That simply is not what the legislature is intending. On the temporal quality, on the property here in this case, there's no case dealing with DUI on this probable cause on the temporal aspect, is there? With respect to the testing statute? With these statutes. There's no other case out there. In the case you cite, it's an arrest. They arrest the person who did a search after them. Right. No, not specifically that I'm aware of, other than the general versus general constitutional requirement the probable cause exists prior to a search. By analogy, you were using that analogy. The arrest and the search came afterwards, right? Right, that's correct. I'd also note that in Schmerber v. California, the United States Supreme Court applied Fourth Amendment principles to, well in that case it was a taking of a blood sample in a DUI case. But clearly any time you have a search, and a compelled search, you have a Fourth Amendment situation, it's a search, which would require probable cause to exist prior to the search. Here the legislature has found here there must be probable cause. Interestingly, were it not for this testing statute, the police could obtain a blood, breath, or urine sample from a motorist, but only if they warrant or consent. Here it's undisputed there was no warrant. The trial judge made a finding there was no consent. The state does not challenge that finding on appeal. Therefore, the police could only obtain urine sample from Mr. Russell in this case by operation of this particular statute, which requires probable cause. So if it requires probable cause to search, the defendant submits that means that probable cause must exist prior to the search. And so the other case law, although may not specifically deal with this exact situation, would still apply. In summary, the defendant submits the judge's interpretation was consistent with the plain language of the statute, the term of art used by the legislature in the statute, that the judge in effect got it right, and that because the police admitted they had no probable cause to believe that he was impaired or intoxicated, this court should affirm the judge's suppression order. Alternatively, even if your honors agree with the interpretation of probable cause before by the state on appeal, police didn't have that probable cause either. And therefore, your honors should affirm for that alternative reason. Okay, thank you very much, Mr. Fisher. Thank you. Mr. Nicolosi. Your honors, in rebuttal, I have nothing further, but if there are any other questions, I'd be happy to answer them. I don't think so. Thank you, Mr. Nicolosi. Thank you both for your argument today. We will take the matter under advisement to get back to you with a written disposition within a short day.